UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEORGE SAIEG,                                   Case No. 09-12321

       Plaintiff,                            District Judge Paul D. Borman

v.                                                  Magistrate Judge R. Steven Whalen

CITY OF DEARBORN, ET AL.,

       Defendants.
_____/

**REPORT AND RECOMMENDATION RE: ATTORNEY FEES**

Before the Court is Plaintiff's post-judgment Motion for Attorneys' Fees, Costs, Expenses and Nominal Damages [Doc. #76], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. 636(b)(1)(B). For the reasons and under the terms discussed below, I recommend that the motion be GRANTED.

                                       **I.    BACKGROUND**

This is a First Amendment case. In 2009, Plaintiffs George Saieg and his organization, the Arabic Christian Perspective ("ACP") sued the City of Dearborn, Michigan and its Chief of Police under 42 U.S.C. § 1983, claiming violations of their First Amendment rights to free speech, free association, and free exercise of religion, in addition to violation the Equal Protection Clause of the Fourteenth Amendment.[1] Plaintiff, who professes to be Christian and who founded the ACP, has for a number of years been engaged in proselytizing Muslims. In his amended complaint, ¶ 9 [Doc. #13], Plaintiff described the ACP as a "national ministry established for the purpose of proclaiming the Holy Gospel of Jesus Christ to Muslims. As part of its

---

[1] The AIC was latter dismissed as a Plaintiff, upon its dissolution.

outreach efforts, ACP travels around the country attending and distributing Christian literature at festivals and mosques."  In 2009, Plaintiff sought to distribute literature, targeted at Muslims, at a public festival in Dearborn sponsored by the Arab American Chamber of Commerce. Plaintiff and other members of the ACP had done this at the festivals held from 2004 to 2008. However, when Mr. Saieg revealed his plans to continue this practice at the 2009 festival, he learned that the new Chief of Police, Chief Haddad, would not permit anyone to distribute leaflets while walking around the Festival. The amended complaint challenging this policy sought declaratory and injunctive relief, attorney fees and costs, and nominal damages.

On June 7, 2010, the district court denied summary judgment to the Plaintiff and granted summary judgment to the Defendants [Doc. #57]. On June 17 2010 (prior to the 2010 festival), the Sixth Circuit granted a preliminary injunction pending appeal, ruling that Plaintiff was likely to succeed on the merits. On May 26, 2011, the Sixth Circuit reversed the district court on the free speech claim, but affirmed the district court on Plaintiff's other claims. The Sixth Circuit stated, in pertinent part:

> "On the free speech claim, we REVERSE the district court's grant of summary judgment to the defendants and its denial of summary judgment to the plaintiff. We thereby invalidate the leafleting restriction within both the inner and outer perimeters of the Festival."

*Saieg v. City of Dearborn*, 641 F.3d 727, 730 (6th Cir. 2011).

The Sixth Circuit also found that "[i]n addition to declarative and injunctive relief, Saieg is entitled to nominal damages for the violation of his constitutional rights." *Id*., 741.

On June 14, 2011, on remand from the Sixth Circuit, the district court entered judgment for Plaintiff on his First Amendment free speech claim:

> "IT IS ORDERED AND ADJUDGED that this Court's order granting summary judgment to Defendants and denying summary judgment to Plaintiff (Dec No. 57) is REVERSED IN PART and judgment is hereby entered in Plaintiff's favor on his First Amendment free speech claim as against all Defendants. Accordingly, the Court hereby invalidates and permanently enjoins Defendants, their officers, agents, servants, employees, and attorneys and any other persons who are in active concert or participation with them, including the Wayne County Sheriff's Department and the American Arab Chamber of Commerce, from enforcing the leafleting restriction as set forth in the Opinion of the Sixth Circuit.
>
> IT IS FURTHER ORDERED that the Court's order granting summary judgment to Defendants as to all remaining claims (Doc. No. 57) is AFFIRMED." [Doc. #73].

Plaintiff now seeks $134,241.59 in attorney fees, costs and expenses.

## II. LEGAL PRINCIPLES

42 U.S.C. § 1988 provides, in pertinent part, that "[i]n any action or proceeding to enforce a provision of section[] 1983...of this title,...the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs...." Attorney fees awarded under this section must be reasonable. As the Supreme Court noted in *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), "[t]he most useful starting point for determining the amount of a *reasonable* fee is the number of hours *reasonably* expended on the litigation multiplied by a *reasonable* hourly rate." (Emphasis added). In *Glass v. Secretary of HHS*, 822 F.2d 19, 21 (6th Cir. 1987), the Sixth Circuit, citing *Coulter v. State of Tennessee*, 805 F.2d 146, 149 (6th Cir. 1986), recognized "that the rate-times-hours method of calculation, also known as the 'lodestar' approach, includes most, if not all, of the factors relevant to determining a reasonable attorney's fee."

"The primary concern in an attorney fee case is that the fee awarded be reasonable, that is, one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Reed v. Rhodes,* 179 F.3d 453, 471 (6th Cir.1999). *See*

*also Coulter v. State of Tennessee, supra*, 805 F.2d at 149 ("Legislative history speaks of 'fees which are adequate to attract competent counsel, but which do not produce windfalls,'..and cautions against allowing the statute to be used as a 'relief fund for lawyers'")(internal citations to Congressional Record omitted). Or, as the Fifth Circuit put it in *Johnson*, 488 F.2d at 720, "[C]ourts must remember that they do not have a mandate...to make the prevailing counsel rich." The party seeking an award of fees bears the burden of showing that the request is reasonable. *See Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1176 (6th Cir. 1990).

### III.   DISCUSSION
#### A.   Prevailing Party Status

To justify an award of attorney fees, a party must be a "prevailing party." In *Hewitt v. Helms*, 482 U.S. 755, 760, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987), the Supreme Court noted that "[r]espect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail." In *Texas State Teachers Assn. V. Garland Independent School Dist.*, 489 U.S. 782, 792, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989), the Court refined the definition of "prevailing party" as follows:

> "Thus, at a minimum, to be considered a prevailing party...the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant."

*See also Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources,* 532 U.S. 598, 604-605, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001).

In this case, Plaintiff won in the Sixth Circuit on his First Amendment free speech claim, and on remand, this Court entered judgment in his favor on that claim, ordering permanent injunctive relief. He is clearly a prevailing party.

### B. Hourly Rate

In determining a reasonable hourly rate, "courts should look to the hourly rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Fuhr v. School Dist. of Hazel Park*, 364 F.3d 753, 762 (6th cir. 2004). However, the court retains broad discretion to determine what constitutes a reasonable hourly rate. *Id.; Wells v. New Cherokee Corp.*, 58 F.3d 233, 239 (6th Cir. 1995).

In this case, Plaintiff's counsel requests an hourly rate of $315.00. His declaration (Exhibit 1 to this motion) shows that he is an experienced constitutional litigator who has appeared in state and federal courts throughout the United States. According to the State Bar of Michigan's most recent (2010) Economics of Law Practice Survey, civil rights lawyers in the 75th percentile of earnings bill at a rate of $325 per hour, and those at the 95th percentile at $450 per hour. Counsel's request for $315 per hour is thus at the low end of what a similarly skilled and experienced civil rights lawyer would charge. I therefore find that the requested hourly rate is reasonable.

### C. Number of Hours Expended

Defendants' principle objection to the number of hours that Plaintiff claims is premised on the argument that while Plaintiff was ultimately successful on his First Amendment free speech claim, the Defendant prevailed on every other claim. Defendants also suggest that because Plaintiff failed to obtain any relief from the district court prior to the appeal, his request for attorney fees related to the district court work is unreasonable:

> "Plaintiff's success on its First Amendment free speech claim in the Sixth Circuit occurred only after two Eastern District of Michigan judges declined to award Plaintiff relief in light of two established cases that this Court and Dearborn justifiably relied upon as precedent until the Sixth Circuit

> distinguished the instant case....Dearborn had a good faith belief that it was acting lawfully in continuing to enforce regulations designed to protect the public safety and promote orderliness at the Festival. *Defendants' Response*, at 4-5 [Doc. #86].

The Defendants then argue that because their belief in the validity of their policy was "reasonable," it would be "absurd" to require them to pay Plaintiff's attorney fees:

> "Requiring Defendants to absorb Plaintiff's attorney's fees for the District Court proceedings in this case would produce the absurd result of punishing Defendants for their success in this Court and for acting in accordance with precedent endorsed by two federal judges. Moreover, it would send a message that established precedent and this Court's rulings cannot be relied upon given that a plaintiff potentially *could* persuade the Sixth Circuit to establish new precedent." *Id*. at 5 (emphasis in original).

The Defendants overlook the fact that on remand from the Sixth Circuit, the Plaintiff *did* prevail in this Court on his free speech claim, obtaining declaratory and injunctive relief. *See* Judgment of June 14, 2011 [Doc. #73]. Defendants may have believed that they were "acting in accordance with precedent endorsed by two federal judges," but the Sixth Circuit ultimately held that they were not acting in accordance with the Constitution. I appreciate that reasonable jurists could differ as to the merits of Plaintiff's free speech claim, and that two learned district judges and a dissenting Sixth Circuit judge agreed with the Defendants' position. But this is an attorney fee petition, not a rehearing on the merits, and the fact remains that the Plaintiff won. He is therefore entitled to attorney fees under § 1988.

The fact that the Plaintiff prevailed on only one of his four claims does not necessarily preclude compensation for work performed on the whole case. The more important consideration is the scope of the results that were obtained. In this regard, *Hensley v. Eckerhart,* 461 U.S. at 435, stated:

> "In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a

> desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing the fee. The result is what matters." (citation and footnote omitted).

Similarly, in *Thurman v. Yellow Freight Systems, Inc.,* 90 F.3d 1160, 1169 (6th Cir.1996), the Sixth Circuit held:

> "However, a court should not reduce attorney fees based on a simple ratio of successful claims to claims raised. When claims are based on a common core of facts or are based on related legal theories, for the purpose of calculating attorney fees they should not be treated as distinct claims, and the cost of litigating the related claims should not be reduced." (Internal citations omitted).

*See also Deja Vu v. Metropolitan Government of Nashville and Davidson County, Tennessee*, 421 F.3d 417, 423 (6th Cir. 2005) ("[W]e have repeatedly rejected mechanical reductions in fees based on the number of issues on which a plaintiff has prevailed.").

In this case, the Plaintiff received the full relief that he sought–an invalidation of the leafleting restriction and a permanent injunction barring its enforcement. He would have obtained no greater practical relief had he prevailed on all of his claims. Because this result "cannot fairly be labeled as anything short of excellent, [Plaintiff] is entitled to a fully compensatory fee." *Id*. at 424.

In determining the reasonableness of the "full compensatory fee" to which Plaintiff is entitled, the Court must assess whether the total number of hours claimed is reasonable. While I decline to apportion fees according to which claims were successful and which were not, I agree with Defendants that certain claimed hours, in particular those associated with briefing, seem excessive. For example, Plaintiff claims 93.6 hours for work related to his initial summary judgment motion, 25 hours for his response to Defendant's summary judgment motion, and 7 hours for his own reply brief. This is in addition to the 12.4 hours claimed for his initial motion for a temporary restraining order. Then, Plaintiff claims 44.7 hours for work on his initial brief to the Sixth Circuit, and an

additional 24 hours for his reply brief. I also agree with Defendants that the Plaintiff's several briefs display a certain level of redundancy. Appellate advocacy is best undertaken with a scalpel rather than a meat axe.

Suffice it to say that the Plaintiff litigated this case aggressively, as is, of course, his right. And it is not my intention to dissect his fee petition with the gimlet eye of a tax accountant. But as the court observed in *King World Productions, Inc. v. Financial News Network, Inc.,* 674 F.Supp. 438, 440 (S.D.N.Y.1987), "[w]hile parties to a litigation may fashion it according to their purse and indulge themselves and their attorneys ... they may not foist these extravagances upon their unsuccessful adversaries." (*quoting Farmer v. Arabian American Oil Company,* 31 F.R.D. 191, 193 (S.D.N.Y.1963)). Therefore, it is appropriate to trim some fat from the Plaintiff's fee petition.

Where, as here, there is a voluminous fee application or time sheet, the court "is not required to set forth an hour-by-hour analysis of the fee request" in reducing the fees. *Jacobs v. Mancuso,* 825 F.2d 559, 562 (1st Cir.1987). *See also In re 'Agent Orange' Product Liability Litigation,* 818 F.2d 226, 237-38 (2d Cir.1987) ("no item-by-item accounting of the hours disallowed is necessary or desirable"); *Ohio-Sealy Mattress Mfg. Co. v. Sealy Inc.,* 776 F.2d 646, 657-58 (7th Cir.1985). Rather, "the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of trimming the fat from a fee application." *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir.1992)(internal quotation marks omitted). *See also Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (holding that "the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application.'") (internal citations omitted); *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1202 -1204

(10th Cir. 1986) (affirming a reduction in claimed fees by 77%, the court states, "There is no requirement, either in this court or elsewhere, that district courts identify and justify each disallowed hour.").

The Plaintiff claims total attorney fees in the amount of $133,752.75. I conclude that it would be reasonable and appropriate to reduce this amount by 25%, and grant fees in the amount of $100,314.56.

I also find that the Plaintiff's claim for costs in the total amount of $3,087.40 is reasonable. This includes $276.40 for the Plaintiff's deposition transcript, which was filed under seal in conjunction with the Plaintiff's response to the Defendants' summary judgment motion.

Finally, the Plaintiff requests nominal damages, which were not included in the Court's June 14, 2011 judgment. The Sixth Circuit did find that he was "entitled to nominal damages for the violation of his constitutional rights." The Plaintiff has not moved separately to correct the judgment under Fed.R.Civ.P. 60. Nevertheless, that Rule provides that "[t]he court may correct...a mistake arising from oversight or omission, whenever one is found in a judgment...," and that the court "may do so on motion or on its own, with or without notice." I therefore recommend that the judgment be amended to award the Plaintiff $1 in nominal damages.

### IV.   CONCLUSION

I recommend that the Plaintiff's Motion for Attorneys' Fees, Costs, Expenses and Nominal Damages [Doc. #76] be GRANTED, and that he be awarded $100,314.56 in attorney fees and $3,087.40 in costs, for a total of **$103,401.96**.

I further recommend that the Plaintiff be awarded $1 in nominal damages.

Any objections to this Report and Recommendation must be filed  within fourteen

(14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


                                         s/ R. Steven Whalen
                                         R. STEVEN WHALEN
                                         UNITED STATES MAGISTRATE JUDGE
Date: January 27, 2012


The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on January 27, 2012.

                                         s/Johnetta M. Curry-Williams
                                         Case Manager